*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-BG-0100

IN RE LARRY KLAYMAN

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 334581)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-48-08)

(Argued September 17, 2019            Decided June 11, 2020)

*Stephen A. Bogorad*, with whom *John Thorpe Richards, Jr.*, was on the brief, for respondent.

*H. Clay Smith, III*, Assistant Disciplinary Counsel, with whom *Elizabeth A. Herman*, Deputy Disciplinary Counsel, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before FISHER, THOMPSON, and BECKWITH, *Associate Judges*.

PER CURIAM: The Board on Professional Responsibility (the "Board") has recommended that this court suspend respondent Larry Klayman from the practice of law for ninety days based on his representation of three clients in violation of Rule 1.9 (conflict-of-interest) of the District of Columbia Rules of Professional Conduct (or its Florida equivalent). In this matter, the Office of Disciplinary Counsel

("Disciplinary Counsel") takes exception to the Board's report and recommendation on three grounds. First, Disciplinary Counsel challenges the Board's rejection of the finding by Hearing Committee Number Nine (the "Hearing Committee") that Mr. Klayman violated District of Columbia Rule of Professional Conduct 8.4(d). Second, Disciplinary Counsel takes exception to the Board's rejection of the Hearing Committee's finding that Mr. Klayman gave false testimony and made false representations to the Hearing Committee. Finally, Disciplinary Counsel takes exception to the Board's recommendation that we impose a ninety-day suspension without a requirement that Mr. Klayman prove his fitness before being reinstated. For the reasons that follow, we accept the Board's recommendations.

## I.

The Board adopted most of the factual findings of the Hearing Committee, including as to the following, a summary regarding the three matters that underlie this disciplinary matter. Mr. Klayman founded Judicial Watch and served as its in-house general counsel from its inception in 1994 until 2003. During Mr. Klayman's tenure at Judicial Watch, Sandra Cobas served as the director of Judicial Watch's Miami Regional Office. She complained to Judicial Watch about her employment

conditions, alleging that she was subject to a hostile work environment during several weeks in 2003. As general counsel, Mr. Klayman provided legal advice to Judicial Watch concerning Cobas's claims. After both Mr. Klayman and Ms. Cobas had ended their employment with Judicial Watch, Ms. Cobas filed a complaint against Judicial Watch in a Florida state court, making the same hostile-work-environment allegations. The Florida trial court granted a motion to dismiss the case (calling the complaint "'silly and vindictive'"). Thereafter, without seeking consent from Judicial Watch, Mr. Klayman entered an appearance on Ms. Cobas's behalf and filed a motion requesting that the trial court vacate its order of dismissal. When the motion was denied, Mr. Klayman filed a notice of appeal on Ms. Cobas's behalf and, later, a brief in a Florida appellate court, but the appellate court affirmed the dismissal.

In 2002, while still employed by Judicial Watch, Mr. Klayman solicited a donation from Louise Benson as part of a campaign to raise funds to purchase a building for the organization. Klayman was acting as both chairman and general counsel of Judicial Watch when he solicited this donation from Benson. Ms. Benson committed to donate $50,000 to the building fund, and thereafter paid $15,000 towards that pledge. Judicial Watch did not purchase a building. In 2006, after Mr. Klayman had left Judicial Watch, he and Ms. Benson filed a lawsuit against Judicial

Watch in federal court, where they were represented by attorney Daniel Dugan. Ultimately, the federal district court dismissed Ms. Benson's claims (but not Mr. Klayman's claims) on jurisdictional grounds. Shortly thereafter, Ms. Benson sued Judicial Watch in the Superior Court of the District of Columbia, alleging *inter alia* unjust enrichment and seeking a return of her donation. Initially, she was represented in that suit by Mr. Dugan. Eventually, and without seeking consent from Judicial Watch, Mr. Klayman entered an appearance in the case as co-counsel for Ms. Benson. Judicial Watch requested that Klayman withdraw, stating that he organized the fundraising effort that was at the center of Ms. Benson's complaint while he was Judicial Watch's attorney, and noting that Ms. Benson had identified him as a fact witness. When Mr. Klayman did not withdraw, Judicial Watch moved to disqualify him. The motion for disqualification was never decided, as the parties stipulated to the dismissal of the case.

In 2001, while Mr. Klayman was still employed by Judicial Watch, Judicial Watch and Peter Paul entered into a representation agreement, and a modification thereto, under which Judicial Watch agreed to evaluate legal issues emanating from Mr. Paul's fundraising activities during the election campaign for the New York State Senate in 2000 and to represent him in connection with an investigation into alleged criminal securities law violations and possible civil litigation stemming from

those fundraising activities. Mr. Klayman drafted, edited, and approved the representation agreement and modification and authorized the signing of both documents as Judicial Watch's chairman and general counsel. Judicial Watch later represented Mr. Paul in a civil lawsuit brought in California state court. Following Mr. Klayman's departure from Judicial Watch, Judicial Watch withdrew from the representation. Thereafter, Mr. Paul sued Judicial Watch in the United States District Court for the District of Columbia alleging, among other theories, that Judicial Watch breached its representation agreement with him. While Mr. Paul initially was represented by Mr. Dugan, Mr. Klayman entered an appearance in the case without seeking Judicial Watch's consent. Judicial Watch moved to disqualify Mr. Klayman. The district court (the Honorable Royce Lamberth) granted the motion to disqualify, finding that Mr. Klayman's representation of Mr. Paul violated Rule 1.9. The court found that Mr. Klayman was representing the plaintiff "in a matter directly arising from an agreement he signed in his capacity as [g]eneral [c]ounsel for the current defendant" and that Mr. Klayman's representation of Mr. Paul was "the very type of 'changing of sides in the matter' forbidden by Rule 1.9."

The Hearing Committee found that Mr. Klayman violated Rule 1.9 (or its Florida equivalent) in all three matters and violated Rule 8.4(d) in the Paul matter. It also found that Mr. Klayman gave false testimony before the Hearing Committee

and that his disciplinary history in Florida in connection with an unrelated matter was another aggravating factor. On the basis of all the foregoing, the Hearing Committee recommended that Mr. Klayman be suspended for ninety days, with reinstatement contingent upon a showing of his fitness to practice law. The Board, by contrast, recommended that Klayman be suspended for ninety days with no fitness requirement. The Board disagreed with the Hearing Committee's finding that Disciplinary Counsel proved a violation of Rule 8.4(d) and with its finding that Mr. Klayman provided false testimony.

Before this court, neither Mr. Klayman nor Disciplinary Counsel takes issue with the finding that Mr. Klayman violated Rule 1.9 or its Florida equivalent in the matters described above, and we therefore need not address that finding. Rather, as the Board did, we adopt the vast majority of the Hearing Committee's thorough analysis. However, as noted above, Disciplinary Counsel takes exception to the Board's findings regarding Rule 8.4(d) and false testimony, and to the Board's recommended sanction insofar as it omits a fitness requirement. We discuss these matters below.

**II.**

Disciplinary Counsel has the burden of proving a violation of the Rules of Professional Conduct by clear and convincing evidence. *In re Speights*, 173 A.3d 96, 99 n.3 (D.C. 2017). "When reviewing a recommended disciplinary sanction against an attorney, this court must accept the Board's findings of fact if they are supported by substantial evidence." *In re Sneed*, 673 A.2d 591, 593 (D.C. 1996). The Board "has the power to make its own factual findings" but "must accept the Hearing Committee's evidentiary findings, including credibility findings, if they are supported by substantial evidence in the record." *In re Bradley*, 70 A.3d 1189, 1193 (D.C. 2013) (internal quotation marks and emphasis omitted). "Substantial evidence means enough evidence for a reasonable mind to find sufficient to support the conclusion reached." *In re Thompson*, 583 A.2d 1006, 1008 (D.C. 1990). "[T]he Board and this court owe no deference to the Hearing Committee's determination of 'ultimate facts,' which are really conclusions of law and thus are reviewed *de novo*." *Bradley*, 70 A.3d at 1194. "Whether [a] respondent gave sanctionable false testimony before the Hearing Committee is a question of ultimate legal fact that the Board and this court review *de novo*." *Id.* "[T]his court usually adopts the Board's recommended sanction 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted[.]'" *Sneed*, 673 A.2d at 593.

**III**.

Rule 8.4(d) establishes that it is professional misconduct for a lawyer to "[e]ngage in conduct that seriously interferes with the administration of justice[.]" *Id.* For conduct to violate Rule 8.4(d), the conduct must be improper, "bear directly upon the judicial process," and "taint the judicial process in more than a *de minimis* way." *In re Carter*, 11 A.3d 1219, 1224 (D.C. 2011) (internal quotation marks omitted).

Disciplinary Counsel asserts that the "Board erred by overturning the Hearing Committee's conclusion that Mr. Klayman violated Rule 8.4(d) when he appeared on behalf of [Mr.] Paul with a 'clear conflict of interest' and litigated against disqualification for the second time." The Board cited a number of reasons for rejecting the Hearing Committee's conclusion, including its longstanding "concern[] about the scope of Rule 8.4(d) in litigation-related disciplinary matters" and its view that any Rule 8.4(d) violation would be "derivative of the conflict[-]of[-]interest finding." But the Board primarily followed this court's lead in considering the views of the judge who presided over the litigation in which the disqualification motion was filed. *See In re White*, 11 A.3d 1226, 1232 (D.C. 2011). The Board found it "extra significan[t]" that Judge Lamberth, though he granted the motion to disqualify

Mr. Klayman, found "'a legitimate debate about [Mr. Klayman's] conduct'" and further found that Mr. Paul was a needy client who could not otherwise have afforded legal services. In light of the "extraordinary situation" of Judge Lamberth's "supportive testimony" to the Hearing Committee, the Board was unable to conclude that Mr. Klayman's "behavior sufficiently tainted the judicial process to a degree adequate to sustain the Rule 8.4(d) charge."[1] We accept the Board's reasoning and agree that no Rule 8.4(d) violation was proven by clear and convincing evidence.

## IV.

Before the Hearing Committee, Mr. Klayman testified, "I believed that Mr. Dug[]an had given the advice of counsel that I could do this [i.e., represent Ms. Benson], otherwise he [Dugan] wouldn't have prepared the pleading" opposing the motion to disqualify Mr. Klayman based on Rule 1.9." The Hearing Committee found that this testimony was false, as was Mr. Klayman's testimony that Mr. Dugan "was the one who prepared the response to that disqualification motion."

---

[1] The Board noted that in *White*, by contrast, Judge Lamberth concluded that White's conduct had tainted the proceedings; specifically, "[t]he entire litigation was disrupted and delayed while the [d]istrict [c]ourt dealt with the motion to disqualify[,]" and the court had to strike an entire deposition because of White's presence. *Id.* at 1232.

Disciplinary Counsel contends that this court should defer to the Hearing Committee's false-testimony findings as supported by substantial record evidence.

The Board found that Disciplinary Counsel failed to prove by clear and convincing evidence that Mr. Klayman gave false testimony. The Board observed that the Hearing Committee had relied almost entirely on Mr. Dugan's testimony that he did not endorse Mr. Klayman's appearance in the Benson matter. The Board reasoned, however, that the forcefulness of Mr. Dugan's testimony was undercut by his repeated inability to recall the substance of key conversations that took place between him and Mr. Klayman eight years earlier. In addition, the Board cited prior, "apparently inconsistent" statements that Mr. Dugan had made about the matter (e.g., Mr. Dugan's apparent statement to Judicial Watch's counsel, referred to in Judicial Watch's memorandum in support of its motion to disqualify, that there was "no ethical issue arising from" Mr. Klayman's representation of Ms. Benson).

The Board's description of Mr. Dugan's "diminished recollection" of his discussions with Mr. Klayman about the latter's entry of his appearance in the Benson matter, and about Judicial Watch's demand that Mr. Klayman withdraw from the representation, is supported by the record. Further, while the Hearing Committee reasoned that Mr. Klayman "cannot have inferred" that Mr. Dugan

blessed his entry of appearance in the Benson matter from Mr. Dugan's filing of the opposition to the motion to disqualify since Mr. Dugan "did not write the opposition[,]" Mr. Dugan acknowledged that his associate may have edited the draft opposition before it was filed, acknowledged that he (Dugan) did *sign* the opposition, and testified that he would not have done so if he had thought that it was frivolous or thought it violated any ethics or pleadings rules. Additionally, Mr. Klayman's testimony was to the effect that the circumstances caused him to *believe* that Mr. Dugan had given the advice of counsel. We agree with the Board that there was not proof by clear and convincing evidence that Mr. Klayman testified dishonestly as to his belief and recollection. Accordingly, we accept the Board's conclusion rejecting the finding that Mr. Klayman testified falsely.

## V.

In explaining its sanction recommendation, the Hearing Committee found that Mr. Klayman's misconduct was aggravated by his prior discipline in Florida and his denial of responsibility as to the underlying conduct. He received a public reprimand in that jurisdiction after he failed to timely pay the full amount ($5,000) he had agreed to repay to a former client after mediation to resolve a fee dispute. The Board gave this matter little weight because of Mr. Klayman's explanation that a serious

car accident had rendered him unable to work at full capacity and caused him "significant financial difficulties" that affected his ability to pay. We accept that evaluation.

We also accept the Board's conclusion that Disciplinary Counsel did not show that a fitness requirement is warranted in this case. To be sure, Disciplinary Counsel proved that Mr. Klayman flagrantly violated Rule 1.9 on three occasions. His misconduct was not isolated, and, it appears, he acted vindictively and "motivated by animus toward Judicial Watch" (with which he had developed an acrimonious relationship). We agree with the Board and the Hearing Committee that his misconduct was intentional rather than inadvertent or innocent. We also readily agree with the Board that his misconduct — involving a "switch[ing of] sides" that strikes at the integrity of the legal profession — deserves the serious sanction of a ninety-day suspension. Nevertheless, we are not left with "[s]erious doubt" or "real skepticism" that Mr. Klayman can practice ethically. *In re Adams*, 191 A.3d 1114, 1120 (D.C. 2018). Accordingly, we decline to impose a fitness requirement. We do, however, concur with Disciplinary Counsel's original recommendation that Mr. Klayman be ordered to complete a continuing legal education ("CLE") course on conflicts of interest.

Wherefore, effective thirty days after entry of this order, Mr. Klayman is suspended from the practice of law. The period of suspension is ninety days, commencing after he has filed the affidavit required by D.C. Bar R. XI, § 14(g). Before reinstatement, he must also complete a CLE course on conflicts of interest.[2]

*So ordered.*

---

[2] The pending motion by his counsel to withdraw is hereby granted.